*New-Haven,*
June,
1817.

Baldwin
*v.*
Norton.

### BALDWIN *against* NORTON and others.

*IN the report of this case,* ante 161. 168., *Judge* Smith *is
stated to have concurred in the opinion of Judge* Edmond.
*This is true as to the result ; but as he proceeded on very
different grounds in coming to that result, it seems proper
to subjoin, in this place, a correct note of his opinion, with
which the Reporter has since been furnished.*

SMITH, J. It appeared from the plaintiff's bill, and the
facts proved in this case, that on the 19th of *March,* 1807,
*Horace Baldwin* gave a mortgage of a farm of land, to secure
the payment of a note of 1739 dollars, to *Timothy Leonard ;*
and on the 10th of *May* 1808, he gave a mortgage of the
same land to *Ashbel Baldwin,* to secure the payment of a note
of 500 dollars : and further, that on the 13th of *May* 1811,
*Horace Baldwin* conveyed, by quit-claim deed, his equity of
redemption in the land, to *Leonard,* and, in consideration
thereof, took up his note. Whether an express contract
was entered into between *Horace Baldwin* and *Leonard,* that
the latter should pay the debt to *Ashbel Baldwin,* does not
appear ; nor is it material, in the present case, to enquire :
because the nature and legal effect of the arrangement made
between *Horace Baldwin* and *Leonard* place the rights of
*Ashbel Baldwin* on the same ground as though such contract
did appear ; and many circumstances exist in the case strong-
ly calculated to induce a belief, that if there was no express
contract, it was the understanding of the parties, that *Leo-
nard* should pay the debt to *Ashbel Baldwin.* I consider the
purchase of the equity of redemption by the first mortgagee,
and cancelling his debt against the mortgagor, as being, in
the nature and legal effect of the transaction, a purchase of
the land, subject to the second mortgage. After this ar-
rangement, *Horace Baldwin* can have no interest in the land,
in any event ; and, of course, no interest in removing the
incumbrance of *Ashbel Baldwin.*

On the other hand, after the arrangement made between
*Horace Baldwin* and *Leonard,* vesting in the latter an inde-
feasible title, subject only to the mortgage of *Ashbel Baldwin,*
*Leonard* must be alone affected by that mortgage ; and
whether a remedy is sought by a bill to redeem, or to fore-

close, still *Leonard* alone has the interest. I consider him, therefore, as assuming the debt and the mortgage of *Ashbel Baldwin ;* and so far as it regards the incumbrance on the land, as stepping into the shoes of *Horace Baldwin.* Where there are two mortgages, and the first mortgagee wishes to become a purchaser of the estate, I see no more appropriate method of doing it, than by an arrangement of this kind with the mortgagor ; which secures to him the estate, at all events, by discharging the second mortgage. If a first mortgagee wishes further security, he will, of course, take another mortgage : if he wishes to purchase the ultimate equity, retaining his mortgage, he will make the purchase, holding his debt uncancelled. But where the mortgagor and first mortgagee both understandingly intend a sale and purchase of the estate, subject to the second mortgage, they will usually make precisely the arrangement which was made in this case. The character of mortgagee, by such arrangement, is lost, and merged in that of mortgagor. There can be no such thing as a mortgage in equity *without a debt.* If that is assigned, the pledge follows it ; if it is cancelled, the pledge is discharged.

That *Leonard* does not sustain the character of mortgagee in equity, sufficiently appears from the mere fact of giving up the note ; which has ever been considered as the most effectual mode of discharging the debt. Had he added a discharge in writing, in the fullest manner, it would not have added to the effect. The delivering up of a note, is a contract executed ; and, if done voluntarily, without fraud or mistake, it will effectually discharge the debt, even without a consideration. But in the present case, there was a good consideration. An equity of redemption is an interest in land, recognized by law, and in some cases, of great value ; in the present case, when united with the interest of the first mortgagee, probably of as great or greater value than the debt.

There has appeared some solicitude, in this case, lest the first mortgagee should be postponed to the second ; but parties must be at liberty to make any contracts they please, and must be supposed to make them with a view to all the consequences, which the law attaches to them. But in the present case, the contract may have been, and probably was, an advantageous one to *Leonard.* This would be the case,

New-Haven,
June,
1817.

Baldwin
v.
Norton.

if the land was worth more than enough to pay both mortgages ; and it appears that *Leonard* soon after sold the land, by a clear deed with warranty, to *Norton*, upon the consideration of 2400 dollars, and took a mortgage to secure the purchase money—a sum more than sufficient to pay both mortgages. By this deed, it should be remarked also, *Leonard* actually laid himself under obligations to *Norton* to raise *Ashbel Baldwin's* mortgage, as the continuance of it was a breach of his covenants of seisin and warranty.

This arrangement between the mortgagor and first mortgagee, has been compared to a foreclosure of the equity of redemption by the first mortgagee, without making the second mortgagee a party. To my mind, however, there is little or no analogy. The foreclosure of a mortgage is a proceeding well known in chancery, and all the rules regarding it are well settled. The mortgagee still retains his character ; and his debt, to many purposes, remains unimpaired. Payment, under various circumstances, may yet be made, and the foreclosure opened. And as it regards the second mortgagee, the debt remains, in all respects, the same after a foreclosure by the first mortgagee, without making him a party, as before. In the present case, the debt has been paid to the satisfaction of the debtor, and his note given up to be cancelled ; and his character of mortgagee has become merged in that of mortgagor.

Still less do I see the analogy, which has been claimed, between this case and that of a debt barred by the statute of limitations. In case of a stale mortgage, where the statute of limitations has attached upon the note, no doubt the debt in equity still remains ; not so, where the debt has been paid by voluntary agreement of the parties, and the note given up to be cancelled.

It has been said, also, that *Ashbel Baldwin* may redeem out of the hands of those claiming under *Leonard*, by paying the original mortgage money ; and that this will do complete justice between the parties. But if the view I have taken be the correct one, *Ashbel Baldwin* can no more redeem now, than he could, if there had never been a mortgage to *Leonard*, and the purchase of the equity of redemption had been an original purchase, paying the same consideration as he has now paid, by giving up the note. In that case, it might as well be said, that a mortgagee shall be permitted to

redeem from an assignee of a mortgagor, by paying the purchase money, as to say, that he may redeem in this case. The difficulty in the way of a redemption, is, that there is no *first mortgage* to redeem, or *debt* to pay ; and although there were once a mortgage and a debt, yet by a voluntary agreement of the parties, the former has been destroyed, and the latter has been turned into purchase money for the estate, subject only to *Ashbel Baldwin's* mortgage. Had the land risen in value, could not those claiming under *Leonard* effectually resist a redemption by *Ashbel Baldwin* ? If it has fallen, shall not the right to redeem be the same ?

I am, therefore, well satisfied, that the legal title remaining in those claiming under *Leonard* is a mere title under a satisfied mortagage, which equity will transfer to *Ashbel Baldwin*, together with the equity of redemption, unless his debt is paid. I am, therefore, perfectly clear, that on this point the superior court were correct in the decree, which they passed.

But, in my judgment, that court were incorrect in admitting evidence of *usury*, not on the ground of objection taken at the trial, that notice had not been given, but on the more fatal ground taken before this Court, that no allegation of usury was contained in the plaintiff's bill. As, however, the court were, in my opinion, correct, in finding the debt paid, the point of usury became immaterial ; and although the court may have erred in admitting the evidence, yet this Court will not, in their discretion, grant a new trial, while it appears from the whole record, that the cause has terminated correctly.

I am, therefore, of opinion, that a new trial ought not to be granted.